IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THERESA RENEE PADILLA,

    Plaintiff,

v.

                                                      Case No. 1:24-cv-01178-MIS-JFR

JOHN DOE (UNINSURED MOTORIST)
and ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,

    Defendants.

**ORDER GRANTING ALLSTATE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S ENTITLEMENT TO PUNITIVE DAMAGES FROM AN UNKNOWN TORTFEASOR**

**THIS MATTER** is before the Court on Defendant Allstate Fire and Casualty Insurance Company's Motion for Partial Summary Judgment on Plaintiff's Entitlement to Punitive Damages from an Unknown Tortfeasor ("Motion"), ECF No. 20, filed January 31, 2025. Plaintiff Theresa Renee Padilla filed a Response on February 14, 2025 ("Response"), ECF No. 25, to which Allstate filed a Reply on February 27, 2025 ("Reply"), ECF No. 26. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** the Motion.

**I.    Background**[1]

On August 9, 2023, Plaintiff was in an automobile accident in New Mexico with an unknown individual ("John Doe") who fled the scene of the accident after crashing into Plaintiff's vehicle. Compl. ¶¶ 7-8, 11. At that time, Plaintiff was insured under a policy issued by Allstate ("Policy") that included uninsured motorist ("UM") coverage for injuries and damages. Id. ¶ 4.

---

[1] The information contained in this section is gleaned from the Complaint, ECF No. 1-1 at 6-10, and is included solely to frame the issues raised by Defendant's Motion.

On September 25, 2024, Plaintiff filed this lawsuit against John Doe and Allstate in New Mexico state court asserting four claims: Counts 1 and 2 allege negligence and negligence per se against John Doe, id. ¶¶ 7-16; Count 3 seeks a declaratory judgment that Allstate owes Plaintiff coverage under the Policy, id. ¶¶ 17-19; and Count 4 alleges that Allstate breached the Policy through a bad faith refusal to distribute proceeds to Plaintiff under the Policy, id. ¶¶ 20-26.  The Complaint seeks compensatory and punitive damages, attorneys' fees, costs, and interest thereon. Id. at 5 (Wherefore clause), ECF No. 1-1 at 10.

On November 11, 2024, Allstate removed the case to this federal district court, invoking the Court's diversity jurisdiction.  Notice of Removal at 2, ECF No. 1.

On January 31, 2025, Allstate filed the instant Motion for Partial Summary Judgment on Plaintiff's Entitlement to Punitive Damages from an Unknown Tortfeasor.  ECF No. 20.  Plaintiff filed a Response, ECF No. 25, to which Allstate filed a Reply, ECF No. 26.

**II.   Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the nonmovant is required to point the court to record evidence of facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  A fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  Id. at 248.  "An issue is 'genuine' if there is sufficient evidence on each side so that

2

a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the nonmovant must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [their] case in order to survive summary judgment." Johnson v. Mullin, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998)).

It is not the court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment. See Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012), abrogated on other grounds by Muldrow v. City of St. Louis, 601 U.S. 346, 355 (2024). Rather, the court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999); see also Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005). However, summary judgment may nevertheless be granted where "the evidence is merely colorable, or is not significantly probative." Liberty Lobby, 477 U.S. at 249-50 (internal citations omitted).

### III.   Undisputed Facts[2]

On August 9, 2023, Plaintiff was in an accident with an unidentified driver. Def.'s Facts ¶ 1. The Policy's UM coverage for bodily injury states:

> **Section I—Bodily Injury Caused By Uninsured Motorists**

---

[2] The following facts are gleaned from Allstate's statement of undisputed facts, which is incorporated in its Motion. ECF No. 20 at 2-3 ("Def.'s Facts"). All facts are undisputed. See Resp. at 4-5.

> **We** will pay damages that an **insured person** is legally entitled to recover from the owner or operator of an uninsured **auto** because of **bodily injury** sustained by an **insured person**. The **bodily injury** must be caused by accident and arise out of the ownership, maintenance, or use of an uninsured **auto**.

Id. ¶ 2. The Policy's UM coverage for property damage states:

> **Section II—Property Damage Caused By Uninsured Motorists**
>
> This section applies to those vehicles which indicate a premium charge for **Uninsured Motorists Insurance for Property Damage** on the Policy Declarations.
>
> **We** will pay damages that an **insured person** is legally entitled to recover from the owner or operator of an uninsured **auto** because of **property damage**. The **property damage** must be caused by an accident and arise out of the ownership, maintenance or use of an uninsured **auto**.

Id. ¶ 3. The Policy defines "uninsured auto" to include a hit-and-run motor vehicle whose driver is unknown. Id. ¶ 4.

## IV.   Discussion

Allstate argues that punitive damages are unavailable under the Policy's UM coverage because Plaintiff is not "legally entitled to recover" punitive damages from an unknown tortfeasor. Mot. at 3-7, ECF No. 20. It argues that under New Mexico law, punitive damages serve the limited purposes of punishment and deterrence, and "when the tortfeasor cannot be punished for his culpable behavior, punitive damages no longer have the desired effect and, therefore, the victim loses the legal entitlement to recover those damages." Id. at 4 (quoting Jamarillo v. Providence Washington Ins. Co., 871 P.2d 1343, 1351-52 (N.M. 1994)). Allstate asserts that although Jamarillo involved a deceased tortfeasor, three cases from this District have applied Jamarillo's reasoning to conclude that punitive damages are unavailable against an unknown tortfeasor. Id. at 5 (citing Ammons v. Sentry Ins. Co., 431 F. Supp. 3d 1280, 1284 (D.N.M. 2019); Dockery v. Allstate Ins. Co., 431 F. Supp. 3d 1307, 1324 (D.N.M. 2020); Rice v. Does 1-5, Case No. 1:23-cv-

01132 KWR/SCY, 2024 WL 3582281, at *2 (D.N.M. June 25, 2024)). Allstate argues that because Plaintiff is not entitled to punitive damages, "there was no breach of contract and there can be no bad faith for failure to pay punitive damages for the actions of an unknown tortfeasor." Id. at 7. It further argues that even if the Court determines that Plaintiff can recover punitive damages for the conduct of an unknown tortfeasor, "the breach of contract claim premised upon Allstate's failure to pay punitive damages still fails as there was a bona fide dispute regarding whether punitive damages for the actions of an unknown tortfeasor are recoverable under UM coverage." Id.

Plaintiff argues that Allstate is improperly attempting to shift the burden to its insureds for finding hit-and-run drivers who cause damage. Resp. at 5, ECF No. 25. She argues that adopting Allstate's argument is contrary to New Mexico public policy because it will result in insurance companies not investigating the identity of hit-and-run motorists and will incentivize insurance companies to conceal evidence that could identify hit-and-run drivers so that they do not have to pay punitive damages awards. Id. at 5-8; see also id. at 15 ("It would be contrary to the public policy of New Mexico to encourage insurers to benefit financially from doing nothing to locate hit-and-run drivers."). Plaintiff argues that punitive damages are available under UM coverage as a matter of New Mexico law and Allstate has no right to deny this coverage. Id. at 9 (citing Stinbrink v. Farmers Ins. Co. of Ariz., 803 P.2d 664, 665 (N.M. 1990); Stewart v. State Farm Mut. Auto. Ins. Co., 726 P.2d 1374, 1377 (N.M. 1986)). She argues that "New Mexico legislators enacted the Uninsured Motorist Act ('UMA') to protect insureds against financially irresponsible motorists, not to protect insurance companies." Id. (citing Stinbrink, 803 P.2d at 665, Stewart, 726 P.2d at 1376). She argues that Ammons and Dockery are unpersuasive because they failed to consider the UMA's intent and because they "fail to acknowledge or address the longstanding rules

5

regarding UM coverage and the Uninsured Motorist Act." Id. at 10.  In this regard, she argues that "New Mexico courts interpret the UMA [Uninsured Motorist Act] liberally to implement its remedial purpose; therefore, any provision that allows for an exception to uninsured coverage is strictly construed to protect the insured." Id. (alteration in original) (quoting Arnold v. Farmers Ins. Co. of Ariz., 760 F. Supp. 2d 1272, 1286 (D.N.M. 2010)).  Plaintiff argues that if "Allstate performed its duty of investigating the identity of the hit-and-run motorist and then prosecuted its subrogation rights against him for the punitive damages paid to its UM-insured, then the purpose of punishing the hit-and-run driver through the punitive damages is accomplished and deterring others from similar conduct is accomplished." Id. at 11.  She further argues that insureds, like Plaintiff, "have already bought and paid for (and continue to pay for) the right to shift the burden of finding so-called 'unknown' tortfeasors from themselves to the insurance company[,]" and "Allstate is now trying to commit a veiled form of fraud on its insureds by depriving them of the rights its insureds bought and paid for through premiums already paid to cover such punitive damages." Id. at 13.  She argues that this conduct violates New Mexico's Unfair Trade Practices Act.[3] Id. (citing N.M. Stat. Ann. § 57-12-2(D)(17)).

    In its Reply, Allstate argues that Plaintiff failed to cite any authority supporting her public policy argument that "Allstate needs motivation to locate unknown hit-and-run drivers[,]" Reply at 2, ECF No. 26, so the Court may assume that no such authority exists, id. (citing Phillips v. Calhoun, 956 F.2d 949, 953-54 (10th Cir. 1992)).  It further argues that "Plaintiff's argument ignores that law enforcement, and not Allstate, is the investigating body for crimes, and one must query whether Allstate would ever have the means to locate a hit-and-run driver that detectives

---

[3] Plaintiff has not asserted a claim for violation of New Mexico's Unfair Trade Practices Act.

have not charged, as ongoing investigation files are privileged." Id. (citing N.M. Stat. Ann. § 14-2-1(A)(4)). It argues that "Plaintiff's argument further ignores that law enforcement is a highly regulated field, and giving the responsibility of investigating crimes to insurers would circumvent the extensive legislation put in place to protect law enforcement officers and the public at large." Id. at 3; see also id. at 3-4. Allstate further argues that it "has incentive to pursue uninsured and underinsured tortfeasors for subrogation by virtue of the fact that Allstate must pay damages its insureds are 'legally entitled to recover' from those tortfeasors, regardless of whether punitive damages are awarded." Id. at 4. It further argues that the public policy purposes for imposing punitive damages—punishment and deterrence—are not furthered by awarding punitive damages for the conduct of unknown tortfeasors. Id. at 6. In this regard, it argues that in New Mexico, "because the limited purpose of punitive damages is to punish and deter persons from certain conduct, there must be some evidence of a culpable mental state or other form of overreaching, malicious, or wanton conduct." Id. (quoting Constr. Contracting & Mgmt., Inc. v. McConnel, 815 P.2d 1161, 1165 (N.M. 1991)). And even though a hit-and-run motorist flees the scene of the accident, because "New Mexico recognizes the 'justification defenses' to even strict liability crimes – in other words, a criminal defendant may avoid punishment for a crime if it was committed under duress or out of necessity[,]" id. at 7 (citing New Mexico v. Castrillo, 819 P.2d 1324, 1328 (N.M. 1991)) – there is no way to prove the requisite culpable mental state to warrant an award of punitive damages against an unknown tortfeasor, id. Allstate further maintains that punitive damages can serve no deterrent effect when the tortfeasor cannot be identified. Id. Allstate further argues that, despite Plaintiff's argument to the contrary, both Ammons and Dockery considered UMA's intent. Id. at 8.

7

For the reasons articulated in Ammons and Dockery, the Court finds that punitive damages are not available against an unknown tortfeasor. See Ammons, 431 F. Supp. 3d at 1296-98; Dockery, 431 F. Supp. 3d at 1313-14; see also Rice, 2024 WL 3582281, at *1-2. Because the Court cannot improve upon Judge Yarbrough's analysis in Ammons, the Court repeats it here in full:

> New Mexico law is clear on two points that bear on whether punitive damages are recoverable against an unknown tortfeasor in UM/UIM cases. First, blanket punitive damage exclusions in UM/UIM policy provisions are void. Stinbrink v. Farmers Ins. Co. of Ariz., 1990-NMSC-108, ¶ 10, 111 N.M. 179, 803 P.2d 664. Where an insured could obtain punitive damages against an uninsured tortfeasor, the insured is entitled to collect payment for those punitive damages from his or her insurance company under the insured's UM policy. Id. But New Mexico law is also clear that where an insured could not legally recover punitive damages from the tortfeasor, neither can he or she recover punitive damages under his or her UM/UIM policy. Jaramillo v. Providence Washington Ins. Co., 1994-NMSC-018, ¶¶ 21-24, 117 N.M. 337, 871 P.2d 1343. Although neither Stinbrink nor Jaramillo explicitly addresses whether punitive damages are available against an unknown tortfeasor, the rationale on which they are based provides guidance helpful to answering this question. Having considered the rationale of these and other related New Mexico cases, the legislative purpose behind enacting compulsory motorist insurance coverage, and the policy goals punitive damages are designed to achieve, the Court concludes that in New Mexico punitive damages are not available for the acts of an unknown tortfeasor.
>
> In Jaramillo, the New Mexico Supreme Court held that punitive damages cannot be recovered against the estate of a deceased tortfeasor. 1994-NMSC-018, ¶ 22, 117 N.M. 337, 871 P.2d 1343. The court explained that, "[i]n New Mexico, the purpose of punitive damages is two-fold: Such additional damages are awarded for the limited purposes of punishment and to deter others from the commission of like offenses." Id. ¶ 26 (internal quotation marks omitted) (emphasis added). "The purpose of requiring an insurer to provide UM coverage is to be sure that an injured insured is compensated for injuries even when the tortfeasor is financially irresponsible." Id. ¶ 24. "In the past, when holding that insurance policies may cover punitive damages, we have relied on the principle that the purpose of punitive damages (to punish the tortfeasor) is not diluted by requiring the insurance company to pay the damages because the insurer can always sue the tortfeasor for recovery of the damages." Id. "When the tortfeasor cannot be punished for his culpable behavior, punitive damages no longer have the desired effect and, therefore, the victim loses the legal entitlement to recover those damages." Id.

Unlike the estate in Jaramillo, against which punitive damages were forever legally barred (because the deceased tortfeasor could never come back to life), it is possible for an unknown tortfeasor to be found. Thus, unlike a deceased tortfeasor, punitive damages against a currently unknown tortfeasor are not necessarily forever foreclosed. Nonetheless, the rationale of Jaramillo applies with equal force to unknown tortfeasors. While the tortfeasor is unknown, no possibility of collecting against that tortfeasor exists. And, if the identity of the tortfeasor is discovered during the pendency of the lawsuit, the plaintiff can always move to amend his or her complaint.

As long as the identity of the tortfeasor remains unknown, punitive damages against the insurer can further neither the purpose of punitive damages nor the purpose of the UMA. Justice Montgomery noted in his dissent in Stinbrink that "[i]mposing punitive damages on the insurer shifts the deterrent effect from the culpable tortfeasor to the innocent insurer and provides a windfall to the insured in the face of the principle that punitive damages are not intended to compensate the plaintiff." 1990-NMSC-108, ¶ 19, 111 N.M. 179, 803 P.2d 664 (Montgomery, J., dissenting). As Justice Montgomery recognized, the New Mexico Supreme Court in Stewart and Baker justified this result by pointing out that the tortfeasor could be punished through a subrogation action by the insurer against the tortfeasor. Id. at ¶ 19 n.2 (citing Stewart v. State Farm Mut. Auto. Ins. Co., 1986-NMSC-073, 104 N.M. 744, 726 P.2d 1374 and Baker v. Armstrong, 1987-NMSC-101, 106 N.M. 395, 744 P.2d 170). Where the tortfeasor is unknown, however, an insurer has no ability to "visit[] punishment on the party guilty of culpable behavior." See id. And, because the wrongdoer pays nothing, a punitive damage award cannot serve as a deterrent to other potential wrongdoers.

Similarly, punitive damages would do nothing to further the UMA's goal of covering the gap in compensation caused by an irresponsible tortfeasor who does not have legally mandated liability insurance. The goal of the UMA is to compensate. Jaramillo, 1994-NMSC-018, ¶ 24, 117 N.M. 337, 871 P.2d 1343 ("The purpose of requiring an insurer to provide UM coverage is to be sure that an injured insured is compensated for injuries even when the tortfeasor is financially irresponsible."). The goal of punitive damages is not compensation. Madrid v. Marquez, 2001-NMCA-087, ¶ 4, 131 N.M. 132, 33 P.3d 683 (noting that punitive damages are "sums awarded in addition to any compensatory or nominal damages, usually as punishment or deterrent levied against a defendant found guilty of particularly aggravated misconduct, coupled with a malicious, reckless or otherwise wrongful state of mind.") (internal quotation marks and citation omitted); State Farm Mut. Auto. Ins. Co. v. Progressive Specialty Ins. Co., 2001-NMCA-101, ¶ 13, 131 N.M. 304, 35 P.3d 309 (noting that, rather than compensating a plaintiff, punitive damages are "a windfall conferred upon an otherwise fully compensated plaintiff") (internal quotation marks and citation omitted). Thus, punitive damages cannot further the goals of the UMA.

True, Stinbrink noted "punitive damages are as much a part of the potential award under the uninsured motorist statute as damages for bodily injury." 1990-NMSC-108, ¶ 5, 111 N.M. 179, 803 P.2d 664. But this statement appears to derive from the court's immediately preceding recognition that the victim of an uninsured tortfeasor might be legally entitled to recover punitive damages from that tortfeasor. Id. ¶ 4. In any event, to the extent Stinbrink opened the door to an argument that the victim of an uninsured tortfeasor could recover punitive damages under his or her UM policy even where the victim could obtain no judgment against the tortfeasor, Jaramillo shut that door four years later. 1994-NMSC-018, ¶ 24, 117 N.M. 337, 871 P.2d 1343 ("When the tortfeasor cannot be punished for his culpable behavior, punitive damages no longer have the desired effect and, therefore, the victim loses the legal entitlement to recover those damages."). Because an unknown tortfeasor cannot be punished for his culpable behavior, Jaramillo applies with equal force in the present case.

A review of case law from other states supports this conclusion. Although research by the Court, Defendant, and Plaintiffs have all failed to yield any case in which any court has allowed punitive damages to be awarded against an unknown tortfeasor, the Court has found decisions coming to the opposite conclusion. For example, the Georgia Court of Appeals has reasoned that an "award of punitive damages against an unknown tortfeasor for the purpose of deterring him from repeated alleged misconduct would be nonsensical," and analogizes the unknown-tortfeasor situation to the inability to obtain punitive damages against a deceased driver. State Farm Mut. Ins. Co. v. Kuharik, 179 Ga. App. 568, 568, 347 S.E.2d 281 (1986). In Clatterbuck v. Doe, the Virginia Circuit Court noted that, under Virginia law, the purpose of punitive damages is punishment and deterrence. 24 Va. Cir. 341, 1991 WL 11015283, at *1 (Aug. 1, 1991). In holding that punitive damages are unavailable against an unknown tortfeasor, it reasoned: "what prospective car thief would be dissuaded from stealing and damaging an automobile if punitive damages were assessed against John Does and collected against [the insurance company]?" Id. The Court finds the reasoning of these cases persuasive, and compatible with the pronouncements of the New Mexico Supreme Court in Jaramillo.

That an award of punitive damages against an unknown tortfeasor cannot achieve the statute's desired goals is further demonstrated by the difficulty in calculating damages against an unknown tortfeasor. Such a calculation requires consideration of the tortfeasor's intent and motive. Did the thief steal the car because he or she wanted a joy ride or did the thief act because he or she wanted a particular plaintiff to suffer? Or, was the thief faced with a desperate situation that would constitute mitigating circumstances? The reason punitive damages are difficult to calculate against an unknown tortfeasor is that a chasm exists between those damages and the goals they are designed to achieve. Because punitive damages would fail to serve their function when issued against an unknown tortfeasor, the Court finds that Plaintiffs are not "legally entitled to recover" punitive damages under their UM coverage. See Boradiansky, 2007-NMSC-015, ¶ 17, 141 N.M. 387, 156 P.3d 25

10

(only two relevant elements of the UMA are "legally entitled to recover damages" and "the motorist be uninsured or underinsured").

431 F. Supp. 3d at 1296-98.  The Court agrees with this analysis and adopts it.  See also Dockery, 431 F. Supp. 3d at 1313-14; Rice, 2024 WL 3582281, at *1-2.

Because punitive damages are not available against an unknown tortfeasor, Plaintiff is not entitled to UM coverage for punitive damages claims against John Doe, and Allstate did not breach the Policy by failing to pay punitive damages.

V.   Conclusion

Accordingly, it is **HEREBY ORDERED** that Allstate's Motion for Partial Summary Judgment on Plaintiff's Entitlement to Damages from an Unknown Tortfeasor is **GRANTED**.

*Margaret Strickland*
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE